**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

CLIFFORD DOOLIN,                              :

                Plaintiff,

    -vs-

MICHAEL J. ASTRUE,
COMMISSIONER OF
SOCIAL SECURITY,

                Defendant.          :

Case No. 3:08-cv-243

District Judge Thomas M. Rose
Magistrate Judge Michael R. Merz

## REPORT AND RECOMMENDATIONS

Plaintiff brought this action pursuant to 42 U.S.C. §405(g) and 42 U.S.C. §1381(c)(3) as it incorporates §405(g), for judicial review of the final decision of Defendant Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for Social Security benefits. The case is now before the Court for decision after briefing by the parties directed to the record as a whole.

Judicial review of the Commissioner's decision is limited in scope by the statute which permits judicial review, 42 U.S.C. §405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings must be affirmed if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *citing, Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Landsaw v.*

*Secretary of Health and Human Services*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence is more than a mere scintilla, but only so much as would be required to prevent a directed verdict (now judgment as a matter of law), against the Commissioner if this case were being tried to a jury. *Foster v. Bowen*, 853 F.2d 483, 486 (6th Cir. 1988); *NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939).

In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hepner v. Mathews*, 574 F.2d 359 (6th Cir. 1978); *Houston v. Secretary of Health and Human Services*, 736 F.2d 365 (6th Cir. 1984); *Garner v. Heckler*, 745 F.2d 383 (6th Cir. 1984). However, the Court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *Garner, supra.* If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the Court as a trier of fact would have arrived at a different conclusion. *Elkins v. Secretary of Health and Human Services*, 658 F.2d 437, 439 (6th Cir. 1981).

To qualify for disability insurance benefits (SSD), a claimant must meet certain insured status requirements, be under age sixty-five, file an application for such benefits, and be under a disability as defined in the Social Security Act, 42 U.S.C. § 423. To establish disability, a claimant must prove that he or she suffers from a medically determinable physical or mental impairment that can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §423(d)(1)(A). Secondly, these impairments must render the claimant unable to engage in the claimant's previous work or in any other substantial gainful employment which exists in the national economy. 42 U.S.C. §423(d)(2).

To qualify for supplemental security benefits (SSI), a claimant must file an

application and be an "eligible individual" as defined in the Social Security Act. 42 U.S.C. §1381a. With respect to the present case, eligibility is dependent upon disability, income, and other financial resources. 42 U.S.C. §1382(a). To establish disability, a claimant must show that the claimant is suffering from a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §1382c(a)(A). A claimant must also show that the impairment precludes performance of the claimant's former job or any other substantial gainful work which exists in the national economy in significant numbers. 42 U.S.C. §1382c(a)(3)(B). Regardless of the actual or alleged onset of disability, an SSI claimant is not entitled to SSI benefits prior to the date that the claimant files an SSI application. *See,* 20 C.F.R. §416.335.

The Commissioner has established a sequential evaluation process for disability determinations. 20 C.F.R. §404.1520 . First, if the claimant is currently engaged in substantial gainful activity, the claimant is found not disabled. Second, if the claimant is not presently engaged in substantial gainful activity, the Commissioner determines if the claimant has a severe impairment or impairments; if not, the claimant is found not disabled. Third, if the claimant has a severe impairment, it is compared with the Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1 (1990). If the impairment is listed or is medically equivalent to a listed impairment, the claimant is found disabled and benefits are awarded. 20 C.F.R. §404.1520(d). Fourth, if the claimant's impairments do not meet or equal a listed impairment, the Commissioner determines if the impairments prevent the claimant from returning to his regular previous employment; if not, the claimant is found not disabled. Fifth, if the claimant is unable to return to his regular previous employment, he has established a *prima facie* case of disability and the burden of proof shifts to the

Commissioner to show that there is work which exists in significant numbers in the national economy which the claimant can perform. *Bowen v. Yuckert,* 482 U.S. 137, 145, n.5 (1987).

Plaintiff filed an application for SSD on May 5, 2004, with a protective filing date of April 30, 2004. (Tr. 51-53). Plaintiff's application was denied initially and on reconsideration. (Tr. 33-35; 37-39). Plaintiff filed an application for SSI on May 23, 2006, alleging disability from April 1, 2002, and that application was accelerated to the hearing level. A hearing was held before Administrative Law Judge Daniel Shell, (Tr. 471-95), who determined that Plaintiff is not disabled. (Tr. 12-25). The Appeals Council denied Plaintiff's request for review, (Tr. 10-11), and Judge Shell's decision became the Commissioner's final decision.

In determining that Plaintiff is not disabled, Judge Shell found that he has severe fibromyalgia, residuals of a right inguinal hernia repair, adjustment disorder with anxiety and depression, and a history of alcohol abuse, (Tr. 18, ¶ 3), but that he does not have an impairment or combination of impairments that meets or equals the Listings. (Tr. 20, ¶ 4). Judge Shell also found that Plaintiff has the residual functional capacity to perform a limited range of light work. (Tr. 21, ¶ 5). Judge Shell then used section 202.18 of the Grid as a framework for deciding, coupled with a vocational expert's (VE) testimony, and concluded that there is a significant number of jobs in the economy that Plaintiff is capable of performing. (Tr. 23, ¶ 10). Judge Shell concluded that Plaintiff is not disabled and therefore not entitled to benefits under the Act. (Tr. 24-25).

In July, 2000, Plaintiff consulted with neurologist Dr. Burkhart for headaches. (Tr. 119-20). Dr. Burkhart noted that Plaintiff had a history of hepatitis A and B, that his examination was essentially normal, and his diagnosis was chronic daily headaches with superimposed headache with migrainous features. *Id.*

4

Examining physician Dr. Danopulos reported on July 2, 2004, that Plaintiff had full ranges of motion of his arms and legs, complained of stiffness but not pain, his muscles were slightly painful to pressure, he had a normal gait, his spine was painless to pressure, and that his paravertebral muscles were soft and painless to palpation and pressure, (Tr. 122-29). Dr. Danopulos also reported that Plaintiff got on and off the exam table without difficulty, his straight leg raising was negative, he was able to squat and arise from a squat and walk on his heels and toes, and that there was no evidence of nerve root compression or peripheral neuropathy. *Id.* Dr. Danopulos noted that Plaintiff's neurological examination was normal. *Id.* Dr. Danopulos also noted that the objective findings were history of myalgias and arthralgias, history of headaches triggered from his uncontrolled, slightly elevated blood pressure, minimal right-sided inguinal hernia, and mild circumstantial depression. *Id.* Dr. Danopulos opined that Plaintiff's ability to do any work-related activities was affected only by his untreated, slightly elevated blood pressure. *Id.*

Plaintiff consulted with internal medicine specialist Dr. Schriber who reported on August 4, 2004, that Plaintiff's examination was normal and that his impression was polyarthralgia of uncertain cause, that there was little evidence to suggest the presence of a chronic inflammatory-type rheumatic illness, and that perhaps there was a functional component to Plaintiff's symptoms such as fibromyalgia syndrome. *Id.*

Examining psychologist Dr. Boerger reported on November 19, 2004, that Plaintiff failed the seventh grade, is able to read but has trouble spelling, that drinking had been a problem for him and he stopped about four years ago, appeared somewhat unkempt and disheveled, was very verbal, and that his speech was somewhat tangential at times. (Tr. 135-40). Dr. Boerger also reported that Plaintiff's affect was appropriate, he felt anxious, was alert and oriented, appeared

aware of his health and emotional problems, and that he displayed mixed depression and anxiety which appeared to be situational in nature. *Id.* Dr. Boerger identified Plaintiff's diagnosis as adjustment disorder with mixed emotional features and he assigned Plaintiff a GAF of 58. *Id.* Dr. Boerger opined that Plaintiff's ability to relate to others was mildly to moderately impaired, his ability to understand and follow instructions was mildly impaired, his ability to maintain attention to perform simple repetitive tasks was mildly impaired, and that his ability to withstand the stress and pressures associated with day-to-day work activity was likely to be mildly to moderately impaired. *Id.*

On May 20, 2004, treating physician Dr. Ahn reported that he first saw Plaintiff in January, 1980, his diagnoses were chronic daily headache, musculoskeletal pain, and right inguinal hernia, and that there were no specific physical findings except bulging in right inguinal area. (Tr. 175-76). Dr. Ahn reported essentially the same information on April 26, 2005. (Tr. 172-74).

Plaintiff was hospitalized on November 21, 2005, at which time Dr. Archer performed a surgical repair of an inguinal hernia. (Tr. 192-95; *see also,* Tr. 243-53).

The record contains a copy of treating physician Dr. Vosler's office notes dated May 12, 2005, through May 9, 2007. (Tr. 178-90; 196-239; 404-14). Those records reveal that Dr. Vosler treated Plaintiff for various medical conditions including hypertension, fibromyalgia, peptic ulcer disease, anxiety, and an inguinal hernia. *Id.* It appears that many of the notations contained in these records were electronically signed by "Raenell Poynter CNP"[1]. *Id.* In June, July, August, and September, 2005, Dr. Vosler completed forms for Plaintiff's insurance company indicating that Plaintiff's disabling condition was fibromyalgia, that he had fatigue and myalgias, and that he was

---

[1] "CNP" is the abbreviation for "community nurse practitioner". Mosby's Medical Dictionary, 8th Ed. (2009).

unable to lift. *Id.*

On May 31, 2006, Dr. Vosler reported that Plaintiff was able to lift up to five pounds constantly, up to ten pounds frequently, and up to 20 pounds occasionally, was able to stand/walk and sit each for one hour a day and for one hour without interruption, and that he was unable to operate machinery due to leg pain from fibromyalgia and unable to lift, push, or pull heavy machinery. (Tr. 254-55).

Plaintiff received mental health counseling at Samaritan Behavioral Health during the period March 14, 2005, to June 6, 2006, for complaints of depression. (Tr. 256-311). Over time, it was noted by Plaintiff's counselors and Drs. Parson and Dyer that Plaintiff was unkempt, had logical thought processes, poor memory, and limited judgment, insight, and impulse control. *Id.* Plaintiff's diagnosis was identified at different times as adjustment disorder with mixed anxiety and major depressive disorder, recurrent, moderate without psychotic features. *Id.* It was also noted that Plaintiff complained of pain in his joints that had been poorly controlled, had been diagnosed with fibromyalgia and treated with antidepressants, none of which were helpful, and that Plaintiff occasionally used Lortabs which he bought on the street and which helped the pain and helped him sleep. *Id.*

The record contains a copy of the office notes from treating physician Dr. Reid dated September 16, 2005, to August 4, 2006. (Tr. 312-48). Those records reveal that Dr. Reid treated Plaintiff for gastrointestinal-related disorders including a hiatal hernia and Barrett's esophagus. *Id.*

Plaintiff underwent a series of sacroiliac joint injections during the period August 9, to September 29, 2006, which Dr. Kominiarek performed. (Tr. 349-75). During that period of time, Dr. Kominiarek noted that Plaintiff had mild to moderate tenderness of the sacroiliac area,

7

moderate to severe muscle spasms, tenderness of the muscles of the lumbar spine and the lumbar paravertebral muscles, and that his neurological examination was normal. *Id.*

Plaintiff continued to receive mental health counseling at Good Samaritan Behavioral Health during the period June 7, 2006, through May 18, 2007. (Tr. 376-403; 467-70). During that time, it was noted that Plaintiff's mood was euthymic at times and depressed at other times, that he occasionally expressed hopelessness and helplessness, he repeatedly requested Xanax, and that at times, he was "doing better" or "doing pretty well". *Id.* On May 11, 2007, Plaintiff's counselor, Sheryl Taggart, reported that Plaintiff's diagnoses were major depressive disorder and anxiety disorder, that he had moderate to marked restrictions in activities of daily living, marked difficulties in maintaining social functioning, marked to extreme deficiencies of concentration, marked deterioration or decompensation in work or work-like settings, and that his GAF was 50. *Id.*

Plaintiff continued to receive treatment from Dr. Kominiarek October 13, 2006, to May 17, 2007. (Tr. 415-65). During that time, Dr. Kominiarek performed eight sacroiliac joint injections. *Id.* In addition, Dr. Kominiarek reported that Plaintiff had mild to moderate tenderness of the lumbar spine and sacrum bilaterally, moderate to severe muscle spasms, tenderness of the lumbar spine and lumbar paravertebral muscles, and normal neurological examinations. *Id.*

In his Statement of Issues, Plaintiff alleges that the Commissioner erred by rejecting the opinions of Dr. Vosler and his mental health therapists and by finding that he is capable of performing a reduced range of light work. (Doc. 6).

In general, the opinions of treating physicians are entitled to controlling weight. *Cruse v. Commissioner of Social Security*, 502 F.3d 532, 540 (6th Cir. 2007), *citing, Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997) (citing 20 C.F.R. §

404.1527(d)(2) (1997)). In other words, greater deference is generally given to the opinions of treating physicians than to those of non-treating physicians. *Rogers v. Commissioner of Social Security,* 486 F.3d 234, 242, (6th Cir. 2007), citing *Wilson v. Commissioner of Social Security,* 378 F.3d 541, 544 (6th Cir. 2004). "A physician qualifies as a treating source if the claimant sees her 'with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition.'" *Cruse,* 502 F.3d at 540 (alteration in original) (quoting 20 C.F.R. § 404.1502). However, a treating physician's statement that a claimant is disabled is of course not determinative of the ultimate issue. *Landsaw v. Secretary of Health and Human Services,* 803 F.2d 211, 213 (6th Cir. 1986). A treating physician's opinion is to be given controlling weight if it is well supported by medically acceptable clinical and laboratory techniques and it is not inconsistent with the other substantial evidence in the record. *Cutlip v. Secretary of Health and Human Services,* 25 F.3d 284 (6th Cir. 1994).

While it is true that a treating physician's opinion is to be given greater weight than that of either a one-time examining physician or a non-examining medical advisor, that is only appropriate if the treating physician supplies sufficient medical data to substantiate that opinion. *See, Kirk v. Secretary of Health and Human Services,* 667 F.2d 524 (6th Cir. 1981), *cert. denied,* 461 U.S. 957 (1983); *see also, Bogle v. Sullivan,* 998 F.2d 342 (6th Cir. 1993). A treating physician's broad conclusory formulations regarding the ultimate issue of disability, which must be decided by the Commissioner, are not determinative of the question of whether an individual is under a disability. *Id.* Further, the Commissioner may properly reject a treating physician's opinion if it is not supported by sufficient medical data or if it is inconsistent with the other evidence of record. *Cf., Kirk, supra; see also, Walters, supra.*

9

Judge Shell rejected Dr. Vosler's opinion on the bases that it was not supported by her clinical notes and was inconsistent with other evidence of record. (Tr. 18, 21).

As noted above, Dr. Vosler essentially opined in May, 2006, that Plaintiff's residual functional capacity was inconsistent with an ability to perform even sedentary work. However, when she offered that opinion, Dr. Vosler did not provide any objective physical findings to support it. In addition, a review of Dr. Vosler's office notes reveals that they primarily recite Plaintiff's subjective complaints and do not contain many objective findings. For example, although on occasion Dr. Vosler noted that Plaintiff had some muscle tenderness, on May 19, 2005, June 23, 2005, August 11, 2005, September 20, 2005, March 13, 2006, May 10, 2006, May 31, 2006, and August 7, 2006, Dr. Vosler noted that Plaintiff was "in no distress" and "in generally good health".

Dr. Vosler's opinion is inconsistent with other evidence of record. For example, Dr. Ahn noted that Plaintiff exhibited no specific physical findings and Dr. Schriber reported that Plaintiff's physical examination was normal. In addition, Dr. Danopulos essentially reported that Plaintiff had a normal physical, including neurological, examination, and that his ability to perform work-related activities was affected by his slightly elevated blood pressure.

Plaintiff argues that individuals with fibromyalgia generally have no objective physical findings.

The Sixth Circuit has recognized that fibromyalgia can be a severe impairment and that, unlike medical conditions that can be confirmed by objective testing, fibromyalgia patients present no objectively alarming signs. *Rogers v. Commissioner of Social Security,* 486 F.3d 234, 243, (6th Cir. 2007), citing *Preston v. Secretary of Health & Human Services,* 854 F.2d 815, 820 (6th Cir. 1988)(per curiam). Fibromyalgia patients manifest normal muscle strength and neurological

10

reactions and have a full range of motion. *Rogers, supra.* The process of diagnosing fibromyalgia includes (1) the testing of a series of focal points for tenderness and (2) the ruling out of other possible conditions through objective medical and clinical trials. *Id.* (citation omitted).

While it is true that Plaintiff has been diagnosed with fibromyalgia, there nevertheless is little in the record to support that conclusion. Specifically, there is no documentation with respect to the presence of the specific focal points for tenderness that are present in fibromyalgia. Nor is there evidence that other possible conditions have been ruled out through objective medical and clinical trials. Rather, it appears that the physicians who have accepted Plaintiff's fibromyalgia diagnosis have done so based only on Plaintiff's subjective complaints and allegations.

Plaintiff also argues that the Commissioner erred by improperly evaluating and rejecting his complaints of disabling pain. Plaintiff's position seems to be that Judge Shell simply dismissed his complaints with little reason therefor. However, contrary to Plaintiff's argument, a review of Judge Shell's decision shows that he specifically discussed Plaintiff's treatment history, the lack of objective findings in the record, the findings and reports from Drs. Ahn, Danopulos, Kominiarek, Archer, and Schriber. (Tr. 18-22).

Plaintiff argues next that the Commissioner erred by rejecting the disability opinion of his counselors at Samaritan Behavioral Health. Plaintiff's position is that Judge Shell failed to even evaluate the records from Samaritan.

Again contrary to Plaintiff's argument, Judge Shell considered the opinions from Plaintiff's counselors and found that they were internally inconsistent and not supported by their clinical notes. (Tr. 21).

First, the Court notes that a counselor is not a "treating source" and, therefore, a

counselor's opinion is not entitled to controlling weight. *See* 20 C.F.R. §§ 404.1502, 404.1527(a)(2). Nevertheless, although Plaintiff's counselor opined that Plaintiff's alleged mental impairment was of Listing severity, in those same documents, the counselors assigned Plaintiff a GAF of 50 which reflects, at worst, severe limitations. Aside from this internal inconsistency, Plaintiff's counselor's opinion is inconsistent with the clinical notes. For example, Plaintiff's counselor frequently noted that Plaintiff was maintaining progress, that his mood was normal, and at times he was "doing better" or "doing pretty well".

Plaintiff's counselor's opinion is also inconsistent with Dr. Boerger's findings and opinions. Specifically, as noted above, Dr. Boerger reported displayed mixed depression and anxiety which appeared to be situational in nature, and he opined that Plaintiff was, at worst, moderately impaired. In addition, Plaintiff's counselor's opinion is inconsistent with the reviewing mental health experts' opinions. (Tr. 141-71).

Under these facts, the Commissioner did not err by rejecting Dr. Vosler's and Plaintiff's mental health counselor's opinions.

Plaintiff argues that the Commissioner erred by finding that he is capable of performing a limited range of light work. Plaintiff's position is that the Commissioner did not rely on any medical evidence in reaching his conclusion but rather relied on his own opinion. Plaintiff argues that this is so because there is no medical evidence in the record that mirrors his residual functional capacity as found by Judge Shell.

A residual functional capacity is an administrative law judge's ultimate finding about what an individual can do despite his or her impairment and it is based on consideration of all the evidence in the case including medical and relevant non-medical evidence. *See,* 20 C.F.R. §§

404.1545, 416.945. It is the administrative law judge's responsibility for determining an individual's residual functional capacity. *See,* 20 C.F.R. §§ 404.1527, 416.927. Of course, as noted above, an administrative law judge must base the residual functional capacity upon a consideration of all the relevant evidence in the case. However, there is no requirement that the residual functional capacity mirror a medical source's opinion on the issue.

First, the Court notes that Judge Shell's finding as to Plaintiff's residual functional capacity is consistent with Dr. Vosler's opinion that Plaintiff is able to lift up to ten pounds frequently and 20 pounds occasionally and with the opinions of Drs. Ahn, Danopulos, Kominiarek, Archer, and Schriber who essentially found few, if any, limitations. Finally, Judge Shell's findings as to Plaintiff's residual functional capacity is consistent with the opinions of the physicians who reviewed the matter at the initial and reconsideration levels. (Tr. 31, 32).

Under these facts, the Commissioner did not err by finding that Plaintiff is capable of performing a limited range of light work.

Our duty on appeal is not to re-weigh the evidence, but to determine whether the decision below is supported by substantial evidence. *See, Raisor v. Schweiker,* 540 F.Supp. 686 (S.D.Ohio 1982). The evidence "must do more than create a suspicion of the existence of the fact to be established. ... [I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." *LeMaster v. Secretary of Health and Human Services,* 802 F.2d 839, 840 (6th Cir. 1986), *quoting, NLRB v. Columbian Enameling & Stamping Co.,* 306 U.S. 292, 300 (1939). The Commissioner's decision in this case is supported by such evidence.

It is therefore recommended that the Commissioner's decision that Plaintiff was not

disabled and therefore not entitled to benefits under the Act be affirmed.

April 16, 2009.

> *s/ Michael R. Merz*
> United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations. Pursuant to Fed.R.Civ.P. 6(e), this period is automatically extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by one of the methods of service listed in Fed.R.Civ.P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See, United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).